IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NVIDIA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 7178 |
| | ) | |
| FEDERAL INSURANCE COMPANY, | ) | Judge Mark Filip |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Nvidia Corporation ("Nvidia" or "Plaintiff") brings this action against Federal Insurance Company ("Federal" or "Defendant") in a two-count complaint. (D.E. 1.[1]) Count I alleges that Federal breached its duty to defend Nvidia in an underlying lawsuit in which Nvidia and one of its employees were defendants. (*Id.* ¶¶ 32, 35-36.) Count II seeks a declaration that, because Federal did not defend Nvidia nor initiate a declaratory judgment action seeking a determination of whether Federal owed a duty to defend, Federal is estopped from denying that it has a duty to indemnify Nvidia and/or its employee for any settlement or adverse judgment in the underlying litigation. (*Id.* ¶¶ 38-40 and Prayer for Relief.) Federal has moved to dismiss the complaint (D.E. 6), and Nvidia has filed a partial motion for summary judgment on issues of liability (D.E. 7), pursuant to Federal Rule of Civil Procedure 56. As explained below, Plaintiff's motion for partial summary judgment is granted with respect to Count I and denied with respect to Count II, and Defendant's motion to dismiss granted with respect to Count II and denied as to Count I.

---

[1] The various docket entries in this case are cited as "D.E. __."

I.    BACKGROUND FACTS[2]

There are no disputed issues of material fact relating to the case. The facts that appear in the complaint are nearly identical to those in Plaintiff's Local Rule 56.1 statement, which is undisputed in its entirety, save for one sentence that is substantively irrelevant.[3]

A.    The Insurance Policy

On October 19, 2001, Federal[4] issued an insurance policy to Nvidia[5] effective from September 1, 2001 to September 1, 2002. (D.E. 1 ¶ 6; D.E. 9 ¶ 2.) Pursuant to the policy, Federal agreed to "pay damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract for . . . personal injury to which this insurance applies caused by an offense." (D.E. 1 ¶ 8 (emphases omitted).) Federal agreed that it "will have the right and duty to defend any insured against a suit seeking damages for . . . personal injury." (Id. ¶ 9 (emphases omitted).) Under the Federal policy, the term "personal

---

[2] The relevant facts are taken from the Plaintiff's Local Rule 56.1 ("L.R. 56.1") statement of facts ("Pl. SF") and exhibits, and Defendant's response to Plaintiff's statement of facts ("Def. Resp. SF"). Where the parties disagree over relevant facts, the Court sets forth the competing versions. In addition, the Court, as it must, resolves genuine factual ambiguities in the non-movant's favor. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

[3] Those factual statements that are supported by statements labeled "D.E. 9" come from Plaintiff's L.R. 56.1 statement and are relevant to and considered for the purposes of Plaintiff's motion for partial summary judgment. Those factual statements that cite to Nvidia's Complaint (D.E. 1) are relevant to and considered for the purposes of Defendant's motion to dismiss. In the interests of completeness, both documents are typically cited, but the parties do not appear to disagree about any salient facts.

[4] Federal is a citizen of New Jersey (where it has its principal place of business) and Indiana (where it is incorporated). (D.E. 1 ¶ 3; D.E. 9 ¶ 3.)

[5] Nvidia is a citizen of California (where it has its principal place of business) and Delaware (where it is incorporated). (D.E. 1 ¶ 2; D.E. 9 ¶ 1.)

injury" is defined to include "injury, other than bodily injury, arising out of one or more of the following offenses committed in the course of your business, other than advertising: . . . oral or written publication of material that slanders or libels a person or organization." (*Id.* ¶ 11 (emphases omitted).)

B.    The Underlying VisionTek Suit

In November 2002, Michael Eber, Trustee for the benefit of the creditors of VisionTek, LLC, filed a lawsuit in the Circuit Court of Cook County, Illinois, against multiple defendants, including Nvidia and its employee, Hilton Sessel. (*Id.* ¶ 12; D.E. 9 ¶ 6.) (That suit was later was removed to the Northern District of Illinois, and has since been the subject of subsequent amendments. (*See generally* D.E. 1 ¶¶ 12-16.)) In VisionTek's Second Amended Complaint, it alleges that "Nvidia, through its director of sales, Sessel, . . . met and/or otherwise discussed with" various co-defendants "and agreed to cooperate in [a] plan" for some of the co-defendants to "create a new company," to "cripple" and ultimately "take over" VisionTek's business. (*Id.* ¶¶ 17-18.)[6] Consequently, "in furtherance of this plan, Nvidia, through Sessel, . . . advise[d] one or more individuals and/or entities with which . . . [VisionTek] was conducting, or had an expectation of conducting, business, that . . . [VisionTek] did not have the legal right to sell [its] inventory." (*Id.* ¶ 20.) VisionTek further alleged that the "defendants engaged in a campaign to publicly sabotage, disparage, and destroy [VisionTek] . . . . The publication of this information caused irreparable damage to the Debtor's reputation and ability to conduct business." (*Id.* ¶ 21.) Later in the complaint, VisionTek alleged that Nvidia either held or cancelled all open orders

---

[6] The Second Amended Complaint in the underlying lawsuit is incorporated by reference into the summary judgment record (*see* D.E. 9 ¶ 6) and is attached to the Plaintiff's complaint. (D.E. 1 ¶ 16.)

3

placed by VisionTek, which "caused irreparable damage to [VisionTek's] reputation." (*Id.* ¶ 22.) Apparently, all these actions occurred in August 2002. (*Id.* ¶ 23.)

C. The Denial of Coverage

In October 2003, Nvidia notified Federal of VisionTek's lawsuit. (D.E. 9 ¶ 7.) Approximately one month later, Federal informed Nvidia that it was denying coverage for the underlying VisionTek suit and that Federal would neither defend nor indemnify Nvidia for the suit; Stephen L. Newton, counsel for Federal, reaffirmed the denial in September 2004. (*Id.* ¶¶ 8-9; *see also* D.E. 1 ¶ 32.) Thereafter, Plaintiff retained counsel at its expense to defend itself and Sessel.[7] (D.E. 1 ¶¶ 35-36.) From that time until the present, Federal never initiated a declaratory judgment action against Nvidia or Sessel to determine whether Federal owed Nvidia or Sessel a defense in the VisionTek suit. (*Id.* ¶ 40; D.E. 9 ¶ 11.)

II. DISCUSSION

As to Count I, Defendant maintains that under the applicable substantive law—which it asserts is the law of California—VisionTek's lawsuit against Nvidia was outside the terms of Defendant's insurance contract with Nvidia because the VisionTek lawsuit merely was for "trade libel" (or "product disparagement"). (*E.g.*, D.E. 6 at 2.) In Defendant's view, allegations of trade libel, unlike those of defamation, do not trigger its duty to defend. (*E.g.*, *id.*) Nvidia, meanwhile, argues that (1) no conflict exists between Illinois law and California law concerning

---

[7] The Court requested Nvidia to address whether Hilton Sessel was a real party in interest such that his citizenship needed to be considered for assessing the propriety of diversity jurisdiction. In a responsive filing (D.E. 19), Nvidia explained that Sessel is and was a citizen of the State of Alabama at the time the lawsuit was filed (*id.* ¶ 1), such that even if his citizenship were relevant, it would not impair complete diversity. Moreover (although the Court need not rule on the issue), it appears that Sessel is not a real party in interest in any event given applicable indemnification protections he has from Nvidia. (*Id.* ¶ 2.)

4

an insurer's duty to defend and (2), in any event, under Illinois's definition of defamation (which Nvidia asserts should apply because the VisionTek litigation applies Illinois law), VisionTek's complaint potentially included a claim for defamation against Nvidia. (D.E. 12 at 4-12.) As to Count II, Federal contends that California law does not provide for the estoppel Nvidia seeks or, alternatively, estoppel would not be available in this case under Illinois law. (D.E. 6 at 14.) Nvidia posits that estoppel is appropriate in this case under Illinois law, based largely on the concept in Illinois law that an insurer that improperly refuses to defend an insured is thereafter estopped from denying coverage in connection with the underlying claim. (D.E. 12 at 14-15.)

    A.     Choice of Law

           1.     Determining Whether A Conflict Exists Between The Laws of Illinois And California

The first step for the Court is to decide which state's law is to be applied in the instant case. Defendant asserts that California law should apply, while Plaintiff contends that Illinois law is most appropriate. Specifically, the parties disagree about the applicable law as it pertains to two issues: (1) whether the specific allegations contained in the VisionTek lawsuit give rise to coverage under the Federal policy, and (2) whether, as a result of its conduct in responding to Plaintiff's claim, Federal is estopped from denying any indemnity obligations to Plaintiff.

When undertaking a choice of law analysis, the initial step the Court must perform is to determine whether there is, in fact, a conflict between California law and Illinois law. *Int'l Admins., Inc. v. Life Ins. Co. of N. America*, 753 F.2d 1373, 1376 n.4 (7th Cir. 1985). Three potential areas exist for conflict in the instant case: (1) the terms under which an insurer is obligated to defend an insured; (2) whether allegations of trade libel and/or defamation give rise

to a duty to defend and whether such a situation exists here; and (3) whether an insurer may be estopped from denying indemnification if it improperly fails to provide a defense to the insured.

As to the first issue, the parties appear to agree that an insurer must cover an insured party in the same circumstances under both California and Illinois law. In California "[t]he defense duty arises upon tender of a potentially covered claim and lasts until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage." *Scottsdale Ins. Co. v. MV Transp.*, 115 P.3d 460, 464 (Cal. 2005); *see also Montrose Chem. Corp. v. Superior Court*, 861 P.2d 1153, 1157 (Cal. 1993) ("[T]he carrier must defend a suit which *potentially* seeks damages within the coverage of the policy.") (internal quotation omitted; emphasis in original); *Ringler Assocs. Inc. v. Maryland Cas. Co.*, 96 Cal. Rptr. 2d 136, 156 n.12 (Cal. Ct. App. 2000) ("A duty to defend does not exist only when the underlying complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage") (internal punctuation and citation omitted). Similarly, Illinois law holds that "[i]f the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent." *Gen. Agents Ins. Co. of America, Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). Therefore, there is no conflict with respect to this issue. As a general matter, the Court also notes that both California and Illinois law recognize the general principles that when a court assesses the duty to defend, the underlying complaints and insurance policies "must be liberally construed in favor of the insured," and "[a]ll doubts and ambiguities must be resolved in favor of the insured." *U. S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1993) (collecting cases). *Accord, e.g., Ringler Assocs.*, 96 Cal. Rptr. 2d at 153 ("In general, where

6

there is any doubt as to whether the duty to defend exists, the doubt must be resolved in favor of the insured and against the insurer.") (collecting cases).

Second, the Court must consider the relevant law as it pertains to whether trade libel—like defamation—may give rise to a duty to defend. Under California law, it appears that insurance policies, like the one here, with duties to defend against personal injuries, in which the definition of personal injury includes "a publication or utterance of a libel or slander or other defamatory or disparaging material," create a duty to defend against allegations of defamation but not against trade libel/product disparagement. *See Truck Ins. Exch. v. Bennett*, 61 Cal. Rptr. 2d 497, 502, 504 (Cal. Ct. App. 1997); *see also Title Homedics, Inc. v. Valley Forge Ins. Co.*, No. SA CV 99-928 DOC, 1999 WL 33301457, at *2 n.4 (C.D. Cal. Oct. 29, 1999). Illinois law is less clear; there has been no definitive holding from the Illinois state courts one way or the other on this point. *See Walbrook Ins. Co., Ltd. v. Unarco Indus., Inc.*, No. 90 C 5111, 1993 WL 42232, at *4 (N.D. Ill. Feb. 17, 1993). However, at least two federal courts considering the issue have concluded that trade libel may, in fact, give rise to a duty to defend. *See id.*, 1993 WL 42232 at *4-5 (concluding that the insurance policy's use of "defamation" and "unfair competition" was enough also to encompass "product disparagement," such that the insurer had a duty to defend the insured); *Zurich Ins. Co. v. Sunclipse, Inc.*, 85 F. Supp. 2d 845, 855-56 (N.D. Ill. 2000) (holding that the action in that case did not involve product disparagement/trade libel and thus did not create a duty to defend, but implying that if it had, it would have raised such a duty). Combined with the well-held rule of insurance law that a court must construe insurance contracts in doubtful cases in favor of the insured, *see Great West Cas. Co. v. Mayorga*, 342 F.3d 816, 818 (7th Cir. 2003), the Court will presume that Illinois law demands a duty to defend for

7

allegations of trade libel.

Ultimately, however, this issue is of relatively limited significance because, as explained below, the relevant allegations of the underlying complaint at issue in this case are fairly read to allege defamation under both California or Illinois law. So, while the Court finds, as explained further below, that the relevant choice of law principles of Illinois law direct application of California law, even if Illinois law were properly applied on this point, Nvidia nonetheless would prevail on its breach of the duty to defend claim in Count I.

Third, the Court considers the possibility of a conflict on the issue of whether an insured's breach of the duty to defend thereafter estops the insurer from asserting defenses to any indemnification obligation in connection with the underlying litigation. Both parties agree that Illinois law generally provides that an insurer may be estopped from denying indemnification, with a few exceptions, if it fails to provide a defense and also fails to file a declaratory judgment action to address whether it has a duty to defend. (D.E. 12 at 14; D.E. 15 at 7.) They disagree, however, on California's treatment of the issue. Federal maintains that California law does not recognize the estoppel doctrine because, according to its research, "no California court has ever fashioned such a rule." (D.E. 15 at 13.) Plaintiff, meanwhile, does not so much argue that California law *does* recognize the estoppel doctrine as argue that because Federal cited no authority, Federal's argument is a skeletal one that the Court need not consider. (D.E. 12 at 14.) As explained further below, although the parties have collectively identified no cases on the point (instead, with all respect, they both unhelpfully argue about who has waived the point by failing to produce supporting authority), there is substantial authority in this area within California jurisprudence. That authority reflects a substantially different approach to the issue than the one

8

taken by Illinois law. In this regard, the California law on this topic (seemingly like its insurance

law generally, as to both insureds and insurers) is not particularly favorable to waiver/estoppel

claims. So, for purposes of the conflicts analysis, there is a clear divergence of approach between

Illinois and California law on this point.

2.    Applying Choice of Law Principles

As this Court is sitting in diversity, it applies Illinois choice of law principles to

determine the applicable substantive law. *See Comdisco, Inc. v. Lumbermans Mutual Cas. Co.*,

No. 04 C 3605 & 04 C 3791, 2005 WL 946887, at *3 (N.D. Ill. Mar. 24, 2005) (citing *Klaxon

Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Both parties agree that no choice-of-

law provision existed within the four corners of the insurance contract at issue, and that Illinois's

more general choice-of-law principles therefore apply.

Illinois courts employ the "most significant contacts" test to determine the governing

substantive law concerning an insurance contract dispute. *See Jupiter Aluminum Corp. v. Home

Ins. Co., et al.*, 225 F.3d 868, 873 (7th Cir. 2000). Under this test, insurance policy provisions

are normally governed by the following factors: (1) the location of the subject matter; (2) the

place of delivery of the contract; (3) the domicile of the insured or insurer; (4) the place of the

last act to give rise to a valid contract; (5) the place of performance; or (6) some other place

bearing a rational relationship to the general contract. *See Comdisco, Inc.*, 2005 WL 946887 at

*3 (quoting *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 655 N.E.2d 842, 845 (Ill.

1995)).

Certain of the six factors appear relatively straightforward. For example, it is undisputed

that Nvidia, the insured, is a citizen/domiciliary of California and Delaware, while Federal is a

9

citizen/domiciliary of New Jersey and Indiana. To the extent that this factor weighs on the relevant issues (both of which relate to what type of protection should be afforded to Nvidia under the insurance contract), it weighs in favor of California somewhat and Illinois not at all. Likewise, because the contract was produced by a California company[8] and issued to Nvidia at its Santa Clara, California office, it appears that the place of delivery of the contract is California, as well. The location of the subject matter is a bit more nuanced, because the insured subject matter is not a tangible good, such as real property, but rather protection against, among other things, the impact of a lawsuit seeking to vindicate the statements of certain individuals, whether they amounted to defamation or trade libel. That impact (whether by judgment or settlement) would presumably be felt in Nvidia's principal place of business in California. To the extent the location is not California— arguably the policy provides coverage nationwide and thus may implicate multiple locations—the factor is worthy of limited consideration, because "the location of the risk insured by an insurance policy [] is entitled to little weight when the subject matter or risk is located in more than one state." *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 723 N.E.2d 687, 694 (Ill. App. Ct. 1999) (citing, *inter alia*, Restatement (Second) of Conflicts of Laws § 193). Fourth, the place of the last act giving rise to the contract—such as the location of the signing of the policy, paying the premium, or receiving the contract—appears most likely to have been California. Indeed, Nvidia does not suggest otherwise.

The most contentious factor appears to be the place of performance. Nvidia contends that the place of performance is Illinois, because Illinois is the place where Federal "is called upon to

---

[8] More specifically, the "producer" of the policy, Cooper & Cook Insurance Services, provides a California address on the Federal/Nvidia policy. *See* D.E. 1, Attachment 1 at 2 (listing a Pleasanton, California address).

perform its duty to defend" and because "Federal assigned responsibility for the claim to its Chicago office." (D.E. 18 at 8.) But in this regard, Illinois courts have taught that when considering the place of performance, "it may be determined according to the intent of the parties, namely, the intended place of the insurer's payment of claims under the policy." *Emerson Elec. Co. v. Aetna Cas. & Sur. Co.*, 743 N.E.2d 629, 640 (Ill. App. Ct. 2001) (citing 2 Couch on Insurance § 16:11, at 492 (rev. 1984)). To the extent that the parties anticipated the payment of any claims or the performance of any duties under the policy, the locale most foreseeable to the parties at the time of the contract would have been California. There is nothing in the record to indicate that the parties specifically stated the location of any risk, nor that they anticipated that any payment (much less the physical act of defending any claim against Nvidia) was particularly likely to occur in Illinois. To the extent the performance was not anticipated to occur in California, Federal's duty to defend would have occurred wherever an applicable lawsuit against Nvidia arose, meaning multiple potential jurisdictions. In such cases, the "'place of performance can bear little weight in the choice of the applicable law when . . . performance by a party is to be divided more or less equally among two or more states.'" *Id.* at 641 (quoting Restatement (Second) of Conflict of Laws § 188, Comment *e*, at 580). Therefore, the place of performance is either California, or the factor is accorded negligible import.

The final factor is a catch-all: any other place bearing a rational relationship to the general contract. Despite Nvidia's protests to the contrary, the fact that the VisionTek lawsuit was filed in the Northern District of Illinois is not dispositive to the Court's analysis; while not immaterial, Illinois precedent teaches that the location of the applicable underlying action enjoys no significance other than being "considered as an additional relevant factor." *Westchester Fire Ins.*

*Co. v. G. Heileman Brewing Co.*, 747 N.E.2d 955, 962 (Ill. App. Ct. 2001) (collecting cases).

Moreover, Illinois bears a relationship to the instant litigation only insofar as an entity not a party to this litigation, nor one involved with the insurance contract between Nvidia and Federal, decided to bring its lawsuit here. Taken as a whole, the conventional factors in the *Lapham-Hickey* test counsel in favor of applying California law. Combined with the tangential relationship (and limited interest) Illinois has to the contract between Nvidia and Federal, the applicable choice of law principles direct this Court to apply California law to resolve the substantive disputes in the case.

B.    Standards of Review for the Pending Motions

Plaintiff's motion for partial summary judgment will be reviewed under the traditional summary judgment standards. Defendant's motion to dismiss will be governed by a different standard, also discussed below. However, given the agreement of the parties concerning the material facts, the two motions will effectively be treated under the same standard. For practical purposes, the only real open questions are legal ones.

A complaint may be dismissed for failure to state a claim upon which relief may be granted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45 (1957); *see* Fed. R. Civ. P. 12(b)(6). As a general matter, a plaintiff need not anticipate an affirmative defense, but an exception occurs where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (citing *Leavell v. Kieffer*, 189 F.3d 492, 495 (7th Cir. 1999)).

12

Summary judgment, meanwhile, is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmovant cannot rest on the pleadings alone, but must identify specific facts, *see Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a scintilla of evidence to show a genuine triable issue of material fact. *See Murphy v. ITT Educ. Servs., Inc.*, 176 F.3d 934, 936 (7th Cir. 1999) (citation omitted). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmovant. *See* Fed R. Civ. P. 56(c); *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing summary judgment may not rest upon the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 248. There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.*

C.    Count I - Breach of Duty to Defend

"The interpretation of the meaning of an insurance policy and the scope of coverage are questions of law. Whether a third party action asserts a potentially covered claim under the policy triggering the duty to defend requires [the Court] to interpret the language of the insuring agreement and is a question of law." *Barnett v. Fireman's Fund Ins. Co.*, 108 Cal. Rptr. 2d 657, 661 (Cal. Ct. App. 2001) (collecting cases; internal citations omitted).

13

Federal asserts that under California law, the allegations in the VisionTek suit amount to trade libel, not defamation, and consequently, no duty to defend Nvidia existed. (D.E. 6 at 7.)[9] Nvidia, meanwhile, contends that the VisionTek complaint potentially alleged defamation—even if it may *also* have alleged trade libel—and thus implicated Federal's duty to defend. (D.E. 12 at 7; D.E. 18 at 1.)

Under California law, trade libel, also known as product disparagement, is defined as "an intentional disparagement of the quality of property, which results in pecuniary damage to plaintiff. . . . 'Injurious falsehood, or disparagement, then, may consist of the publication of matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general . . . .'" *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 123 Cal. Rptr. 2d 256, 270 (Cal. Ct. App. 2002) (quoting *Nichols v. Great Am. Ins. Co.*, 215 Cal. Rptr. 416, 419 (Cal. Ct. App. 1985)); *see also Truck Ins. Exch.*, 61 Cal. Rptr. 2d at 503. Under California law, defamation is effected either by "libel or slander, each of which is defined as a false and unprivileged publication. Slander, with which we are concerned here, is defined as an oral communication [as opposed to libel, which is

---

[9] At some points, Federal seems to place weight on the fact that the underlying Vision Tek complaint does not expressly allege a defamation claim. *See, e.g.*, D.E. 6 at 4, 11-12. This contention is somewhat puzzling, given that the underlying complaint also does not expressly allege a claim for trade libel, and Federal asserts that the factual allegations in the VisionTek complaint "clearly constitute the distinct tort of trade libel under California law." (*Id.* at 12.) As a matter of law, Federal's contention is also misplaced. *See, e.g.*, *Cincinnati Ins. Co, v. Eastern Atlantic Ins. Co.*, 260 F.3d 742, 745 (7th Cir. 2001). In this regard, precedent teaches that, because "[t]he plaintiff's complaint [in the underlying suit], upon which the insurer's duty depends, need not even set forth the plaintiff's legal theories," "[w]hat is important is not the legal label that the plaintiff attaches to the defendant's (that is, the insured's) conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing the policy covers." *Id.* As explained herein, the conduct alleged at least potentially falls within the scope of a defamation claim under California law and properly triggered the duty to defend.

14

written] that 'tends directly to injure a person in respect to his or her office, profession, trade or business. . . .'" *Noel v. River Hills Wilsons*, Inc., 7 Cal. Rptr. 3d 216, 220 (Cal. Ct. App. 2003) (internal citations and certain internal punctuation omitted for clarity). "Defamation . . . injures a person's reputation. . . . A defamation claim vindicates personal interests, and is a personal injury." *Truck Ins. Exch.*, 61 Cal. Rptr. 2d at 503.

The parties are in agreement that the underlying VisionTek complaint potentially states a claim for trade libel under California law, notwithstanding that such a claim is not expressly denominated. The question for present purposes is whether, as Federal contends, the facts in the complaint can be construed to state a potential claim for trade libel and only trade libel, or whether, as Nvidia contends, there is also a potential claim for defamation such that the duty to defend is triggered.

1.    The VisionTek Complaint Triggers The Duty to Defend Under California Law

The VisionTek lawsuit alleged, in parts relevant to the immediate determination, that the "defendants engaged in a campaign to publicly sabotage, disparage and destroy [VisionTek] . . . . The publication of this information caused irreparable damage to the Debtor's reputation and ability to conduct business." (D.E. 1 ¶¶ 21-22; D.E. 9 ¶ 6.) This allegedly occurred as part of a "plan" to "create a new company," which the complaint explains allegedly would "cripple" VisionTek and "take over [VisionTek's] business." (D.E. 1 ¶¶ 17-18; D.E. 9 ¶ 6.) The VisionTek lawsuit also claims, *inter alia*, that Nvidia and Sessel falsely communicated to clients and putative clients of VisionTek that it "did not have the legal right to sell the Debtor's [i.e., *VisionTek's*] inventory" because it lacked certain software licenses. (D.E. 1 ¶ 20; D.E. 9 ¶ 6; *see*

15

*also* D.E. 12, Ex. E at 388-90 (deposition testimony alleging lack of software licenses[10]).)

The allegations in the VisionTek complaint are sufficient to trigger the duty to defend. Under California law, defamation is effected by either libel or slander (Cal. Civ. Code § 44), and slander is defined to include "a false and unprivileged publication, orally uttered . . . which tends to directly injure [plaintiff] in respect to his office, profession, trade or business . . . by imputing something with reference to his office, profession, trade or business that has a natural tendency to lessen its profits. . . ." Cal. Civ. Code § 46. The underlying complaint's allegations that Nvidia and Sessel falsely stated that VisionTek was selling pirated or unlicensed goods would appear to fit within the broad bounds of such a definition. Similarly, the alleged plot to "publicly sabotage, disparage and destroy [VisionTek]" through the publication of false information which allegedly "caused irreparable damage to [VisionTek's] reputation" (D.E. 1 ¶¶ 21-22; D.E. 9 ¶ 6) also would appear to include a potential claim for defamation within the ordinary meaning of the terms used. *See, e.g.*, Random House Webster's Unabridged Dictionary (2d ed.) at 521-22 (offering, as a synonym for "defame" the word "disparage").

Caselaw supports the idea that the duty to defend was triggered. In *Dobrin v. Allstate Ins. Co.*, 897 F. Supp. 442 (C.D. Cal. 1995), the underlying lawsuit alleged that Dobrin, an attorney, violated his fiduciary duty to his former law partner by falsely informing clients about the nature and circumstances of their firm's dissolution and the partner's role in the dissolution. *Id.* at 443. The plaintiff in the underlying suit also alleged that as a result of Dobrin's alleged misconduct,

---

[10] Federal asserts that this testimony is false (D.E. 17 at 4); however, for present purposes "'[a]ny doubt as to whether the facts establish the existence of the defense duty [of the insurer] must be resolved in the insured's favor.'" *Dobrin v. Allstate Ins. Co.*, 897 F. Supp. 442, 444 (C.D. Cal. 1995) (quoting *Montrose Chmeical Corp. v. Superior Court*, 6 Cal. App. 4th 287, 299-300 (Cal. 1993)).

the plaintiff suffered "humiliation, mental anguish, emotional and physical distress" and was "injured in his mind and body." *Id.* Dobrin sued Allstate for failing to defend under a policy that provided coverage for claims of "libel, slander, or the publication of any material damaging to anyone's reputation." *Id.* The plaintiff in the underlying suit informed Allstate's coverage counsel that "he was not seeking damages for libel, slander, defamation, or invasion of the right of privacy." *Id.* Notwithstanding that disclaimer, *Dobrin* held that Allstate breached its duty to defend. *Id* at 443-44; *see also Truck Ins. Exch.*, 61 Cal. Rptr. 2d at 503 (explaining that defamation relates to injury to one's reputation).

Similarly, in *Barnett v. Fireman's Fund Ins. Co.*, 108 Cal. Rptr. 2d 657 (Cal. App. Ct. 2001), an underlying lawsuit contained allegations that the insureds falsely told third-persons that a plaintiff-business's "methods of doing business were flawed and would result in its failure and made other representations that disparaged and damaged" the plaintiff-business. *Id.* The California Court of Appeals held that such allegations created a duty to defend because "[t]hese allegations trigger at least a potential for coverage under the . . . [policy's] coverage for defamation." *Id.* at 664. This result also supports the conclusion that Federal should have answered the call to defend Nvidia and Sessel here.

In *Trade Ins. Exchange v. Bennett*, 61 Cal. Rptr. 2d 497 (Cal. App. Ct. 1997), the insurance policy at issue covered "the publication or utterance of a libel or slander or other defamatory or disparaging material." *Id.* at 505. The underlying suit included allegations that Bennett, the insured, falsely conveyed that he had an ownership interest a radio station and related companies. *Id.* This communication and claim were alleged to have clouded title to the radio station and related companies, and to have interfered with the ability of the actual owners

17

of the station and companies to do business. *Id.* Under such circumstances, *Truck Ins. Co.*, held

that the coverage for "disparaging" "applies to defamation of a person's reputation, not to an

action for disparagement or slander of title to property." *Id.* at 503. In so holding, *Truck Ins.*

*Co.*, instructed that the tort of defamation is focused on injury to a plaintiff's reputation. *Id.* at

85; *see also* D.E. 1 ¶¶ 21-22, D.E. 9 ¶ 6 (explaining that the underlying VisionTek suit in this

case alleges, *inter alia*, "irreparable damage to [VisionTek's] reputation"). *Truck Ins. Co.*

explained that the torts of defamation and trade disparagement had some differences under

California law (as discussed further below) but that in that case, the reference to "disparaging" in

the insurance policy, read in context, operated "as a synonym for defamatory." *Id.* at 504. This

teaching is useful, because it helps confirm how, read in context, VisionTek's references to

Nvidia's alleged attempts to "disparage and destroy [VisionTek]" through the publication of false

information that "caused irreparable damage to [VisionTek's] reputation" triggered potential

defamation exposure and therefore the duty to defend. (D.E. 1 ¶¶ 21-22; D.E. 9 ¶ 6.)[11]

Federal's arguments against coverage in this case are respectfully rejected. Its

fundamental premise is that while the underlying VisionTek complaint "clearly" alleges trade

libel under California law, it cannot be read, even taking all inferences and ambiguities in the

insured's favor, to allege defamation (or libel or slander). (D.E. 6 at 12.) Given the benefit of

the doubt that insureds get in this area of the law, Federal's attempt to put up a firewall around

---

[11] Contrary to a suggestion that Federal at times appears to make, Nvidia did not agree
with it or concede that no defamation claim was implicated under California law. *See, e.g.*, D.E.
12 at 8 (Nvidia stating that the VisionTek complaint "necessarily includes a potential claim for
defamation under California, as well as Illinois, law."); D.E. 18 at 5 (Nvidia stating that under the
"law of California and Illinois" the VisionTek allegations raise defamation exposure and
therefore trigger the duty to defend).

defamation, after its concession that trade libel is squarely implicated under California law, is not persuasive.

Moreover, the Court respectfully rejects Federal's claim that it offers compelling authority that would support its proposed result. To be sure, some of the cases that Federal cites establish the indisputable fact that trade libel and defamation are different torts, with different requirements that actually are material in some instances. Thus, *Microtec Research, Inc. v. Nationwide Mutual Ins. Co.*, 40 F.3d 968 (9th Cir. 1994), taught that "the defamatory torts of libel and slander are different than trade libel," such that an "action for defamation is designed to protect the *reputation* of the plaintiff, and the judgment vindicates that reputation, whereas the action for disparagement is based on *pecuniary damage*" and the disparagement tort therefore is viable only where "such damage has been suffered." *Id.* at 972 (emphases in original; internal quotation marks and citations omitted). *Microtec* did not say that the two causes of action cannot be implicated at the same time or are mutually exclusive at the pleadings stage. (Multiple potential causes of action are often, of course, implicated in civil litigation by a single set of facts, particularly at the pleadings stage.) Furthermore, in *Microtec*, the plaintiff in the underlying suit "did not aver that Microtec had said anything about it," *id.* at 971, nor was there any evidence that the underlying plaintiff "had suffered damages." *Id; see also id.* at 972 (discussing allegations). Neither of those factors is true here.

Similarly, *Polygram Records, Inc. v. Superior Court*, 216 Cal. Rptr. 252 (Cal. App. Ct. 1985), teaches that trade libel and true libel/defamation are different torts, *id.* at 255, but it taught that where false statements about a business or its goods also question a party's honesty, integrity, and competence, then they potentially can be defamatory. *Id.* at 256. *Polygram* also

expressly recognized that the distinction between defamation and trade libel is "difficult to draw." *Id.* While *Polygram* also noted that the California courts have striven not to read every allegation of a negative statement about a business or its products as constituting defamation, "particularly where the most that can be made out of the words is a charge of ignorance of negligence," that distinction cuts in Nvidia's favor here, where VisionTek alleged that the false statements Nvidia and Sessel made were part of a "campaign to publicly sabotage, disparage and destroy" VisionTek. (D.E. 1¶ 21; D.E. 9 ¶ 6.)

Relatedly, Federal repeatedly cites an unpublished district court decision in which it was involved, *Aurafin-Oroamerica, LLC v. Federal Ins. Co.*, Case No. CV 04-115 AHM (RZx) (C.D. Cal. May 5, 2004). The *Aurafin* decision does not even appear to have been picked up electronically in unpublished form by Westlaw or Lexis or any other reporting service, so the opinion and a related opinion denying a subsequent reconsideration motion were appended to Federal's motion to dismiss, D.E. 6. Aside from the fact that the unpublished decision is, with all respect, of no precedential value, even it is at best a weak endorsement for Federal's position here.

In *Aurafin*, the district court concluded that allegations in an underlying lawsuit did not trigger a duty to defend because the "allegedly false statements were directed at" the plaintiff's property (some jewelry) and not at the plaintiff's "business reputation." (Original Unpublished Order at 18.) The Court "acknowledge[d] that there is only a slight difference" between defamation and trade libel, but it found that California courts try to respect the distinction, particularly where the allegations simply claim negligent or ignorant misconduct. (*Id.*) As explained, however, in this case Nvidia and Sessel were clearly alleged to have engaged in an

20

intentional scheme to "publicly sabotage, disparage, and destroy" VisionTek, and the VisionTek suit also included express allegations that the false statements of Nvidia and Sessel "caused irreparable damage to . . . [VisonTek's] reputation and ability to conduct business." (D.E. 1 ¶ 21; D.E. 9 ¶ 6.) Given these factual distinctions, the reasoning of *Aurafin* therefore, if anything, supports Nvidia, and it surely does not favor Federal in any clearcut way. Furthermore, for what it is worth, a subsequent unpublished order in the case that denied a motion for reconsideration (and which also was attached to Federal's motion) reflects that the *Aurafin* district court had "reluctantly determined" its result in the case. (Unpublished Reconsideration Order at 8 n.2.)

Under these circumstances, the Court holds that the insurer, Federal, had a duty to defend Nvidia that it should have respected. The underlying suit alleged that the false publications harmed VisionTek's "reputation and ability to conduct its business," were part of a campaign to "disparage . . . the Debtor" (as opposed to its products), and that the false statements caused irreparable damage. (D.E. 1 ¶ 21; D.E. 9 ¶ 6.) The claims are within the plain meaning of the defamation tort as defined in the California statute, and doubts in this area of the law go to the insured. Under California law, Federal breached its duty to defend.

      2.     The VisionTek Complaint Also Triggers The Duty To Defend Under Illinois Law

Nvidia raises non-frivolous arguments that the choice of law question concerning this issue (*i.e.*, the issue of whether the underlying VisionTek complaint raises a defamation claim, such that it triggers the duty to defend) should be evaluated under the law of Illinois, where the VisionTek case was filed. This should not be surprising, as the open-ended nature of modern conflicts laws—while allowing for fact-sensitive analysis—also promotes reasonable debate,

21

ambiguity, and perhaps even results that sometimes are in tension with each other. *See generally, e.g.*, *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 916 (7th Cir. 1995) (discussing how courts sometimes "despair at the inoperability of modern conflicts laws").

Nvidia notes in support of its choice of law argument that the underlying case (*i.e.*, the VisionTek case) is proceeding in Illinois—as it has variously bounced among the state trial court, the federal bankruptcy court, the federal district court, and finally appears to have come to rest via consent and reassignment to a newly-seated federal magistrate judge. (D.E. 12 at 7.) Nvidia also notes that, in the underlying VisionTek suit, Illinois law has been applied to the merits of the underlying plaintiff's claims against Nvidia and Sessel. (*Id.*) Nvidia seems to suggest that these factors are dispositive, a contention which appears to conflict with teaching from the Illinois appellate courts that the location of the underlying lawsuit is simply a factor (and not *the* factor) that should be considered. *See, e.g.*, *Westchester Fire Ins. Co. v. G. Heileman Brewing Co.*, 747 N.E.2d 955, 962 (Ill. App. Ct. 2001) (collecting cases); *accord Zurich Ins. Co. v. Sunclipse*, 85 F. Supp. 2d 842, 849 (N.D. Ill. 2000) ("The location of the Underlying Action is sometimes considered as an additional relevant factor . . . .") (collecting cases). Nonetheless, the factor is not irrelevant.

Nvidia also cites *Cohabaco Cigar Co. v. U.S. Tobacco Co.*, 1998 WL 773696, at *10 (N.D. Ill. 1998), in support of its claim that Illinois law should apply. *Cohabaco* suggested that in a multi-state defamation case, Illinois conflicts laws will apply simply the law of the victim's domicile. *See id.* Nonetheless, as *Cohabaco* itself noted, even this approach invites ambiguity when the victim is a corporation, as corporations do not have domiciles and are deemed to be citizens of their state of incorporation and the state where the principal place of business is

22

located. *See id.* at *11. Although Nvidia does not in its argument expressly address the citizenship of VisionTek, a review of the docket in the underlying case (N.D. Ill. Case No. 03-5454) strongly suggests that VisionTek is a Delaware LLC with its principal place of business is Illinois. (*See* D.E. 135 (Answer to Second Amended Complaint) ¶ 5.) A limited liability company is generally deemed to be a citizen of every state in which its members are citizens—*see Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 881 n.1 (7th Cir. 2004) (citing *Belleville Catering Co. v. Champaign Mkt. Place, L.L.C.*, 350 F.3d 691, 692 (7th Cir. 2003))—and neither the parties in this case, nor the answer to the operative complaint in the underlying VisionTek case, addressed the citizenship of the members of the VisionTek LLC. As a result, it is unclear whether the *Cohabaco* approach (assuming it is correct) points clearly to any single locale, and Nvidia certainly has not provided information or argument to address this issue.

In its reply brief, Nvidia also cites *Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116 (7th Cir. 1998). *Massachusetts Bay* applied the standard Illinois "most significant contacts" test to determine which state's law should govern the interpretation of the disputed insurance contract. *Id.* at 1122-23. That case explicitly stressed that it viewed "*the insured risk—the BMW automobile*" as being "*located and repossessed in Nashville, Tennessee.*" *Id.* at 1122 (emphases in original). That highlighted fact, along with the fact that the underlying lawsuit was proceeding with a Tennessee plaintiff in a Tennessee court, were seen as "significant enough contacts to justify the application of Tennessee substantive law." *Id.* Here, by way of contrast, the underlying plaintiff is not necessarily a citizen of only Illinois (Nvidia just does not provide enough information to determine the matter), and the insured risk (omnibus protection

23

against defamation) would seem to span across, at a minimum, several states, in which case Illinois law teaches that "the location of the risk insured by an insurance policy [] is entitled to little weight." *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 723 N.E.2d 687, 694 (Ill. App. Ct. 1999) (citing, *inter alia*, Restatement (Second) of Conflicts of Laws § 193). Nonetheless, the result in *Massachusetts Bay* certainly provides fodder for debate and, as often happens with conflicts questions, the best result on the choice of law front is not pellucid.

In any event, in this case, this issue is of limited practical significance, because the same result is reached under Illinois law.[12] For example, Illinois caselaw teaches that allegations that a company is infringing the intellectual property rights of another entity can state viable claims for defamation. *Republic Tobacco Co. v. North Atlantic Trading Co.*, 381 F.3d 717, 728-29 (7th Cir. 2004) (affirming judgment against defendant for defamation under Illinois law where defendant falsely claimed that plaintiff was violating its patent and trademark rights); *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 993-94 (7th Cir. 2004) (teaching that, under Illinois law, false claims that a competitor "pirated" a product can state a successful claim for defamation if they harm plaintiff in its business). Here, the underlying complaint alleges that Nvidia and Sessel falsely stated that VisionTek did not have the legal right to sell its inventory (D.E. 1 ¶ 20; D.E. 9 ¶ 6), which subsequent discovery has indicated relates to allegations that products were

---

[12] As with California law, Illinois law employs the rule that "the insured is covered against particular conduct alleged against it regardless of the label placed on that conduct by the pleader." *Cincinnati Ins. Co, v. Eastern Atlantic Ins. Co.*, 260 F.3d 742, 745 (7th Cir. 2001). "The plaintiff's complaint [in the underlying suit], upon which the insurer's duty depends, need not even set forth the plaintiff's legal theories. What is important is not the legal label that the plaintiff attaches to the defendant's (that is, the insured's) conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing the policy covers." *Id.*

being sold without appropriate software licenses. (See D.E. 12, Ex. E at 388-90). These accusations—which precedent teaches do not demean the quality of the goods, but rather impugn the seller's integrity, honesty, and business ethics, are seen as putative defamation claims under Illinois law. *See Fedders Corp. v. Elite Classics*, 279 F. Supp. 2d 965, 970 (S.D. Ill. 2003); *see also Clarage v. Kuzma*, 795 N.E.2d 348, 356 (Ill. App. Ct. 2003) (statements falsely "impugn[ing] . . . business ethics" are defamatory *per se*); *Kolegas v. Heftel Broadcasting Corp.*, 578 N.E. 2d 299, 303 (Ill. App. Ct. 1991) (statements are libelous *per se* when they "impute a want of integrity in the discharge of the duties of plaintiff's employment and prejudice plaintiff in his trade or business").

Moreover, entirely independent of that issue, as previously explained and as simply highlighted here, the underlying VisionTek complaint states that Nvidia and Sessel, *inter alia*, "engaged in a campaign to publicly sabotage, disparage and destroy the Debtor [i.e., VisionTek]." (D.E. 1 ¶ 21; D.E. 9 ¶ 6.) It further alleges that "[t]he publication of this information caused irreparable damage to Debtor's reputation and ability to conduct business." (D.E. 1 ¶ 21; D.E. 9 ¶ 6.) Under Illinois law, damage to a party's reputation through the utterance of false communications about that party can constitute potential defamation and therefore triggers the duty to defend. *See, e.g., Clarage*, 795 N.E.2d at 355; *see also U. S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1993) (an insurer cannot refuse to defend "unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage") (emphasis in original; citing *Conway v. Country Cas. Ins. Co.*, 442 N.E.2d 245 (Ill. 1982)); *id.* (when assessing duty to defend under Illinois law, "[t]he underlying complaints and the insurance

policies must be liberally construed in favor of the insured," and "[a]ll doubts and ambiguities must be resolved in favor of the insured") (collecting cases).

Consequently, the Court concludes that VisionTek's complaint triggered the duty to defend under Illinois law as well as California law. Federal neglected to defend Nvidia, thus breaching the terms of the insurance policy. Therefore, the Court denies Federal's motion to dismiss Count I of Nvidia's complaint and grants Nvidia's motion for partial summary judgment with regard to liability on Count I.

D.     Count II - Estoppel to Deny A Duty to Indemnify

The parties devote almost no attention to the subject of choice of law as it relates to the estoppel claim (*i.e.*, the claim that if an insurer has improperly refused to defend an insured, then the insurer is estopped from denying that it must indemnify, irrespective of whether the insurer otherwise could have been held liable for a judgment or loss). As the Court determined elsewhere in the opinion, it will apply California law, and it does so to determine whether Federal is estopped from denying any obligation to indemnify Nvidia for any settlement and/or adverse judgment that may be entered against it in the VisionTek lawsuit.

The parties also devote virtually no productive attention to the substance of this question under California law, and they cite no relevant California law authority. Instead, the parties criticize each other for failing to cite any cases, and both argue that the other side has conceded the point.

This approach is not optimal, particularly given that there is substantial authority about this issue in California law. While the path of California law seems to have taken some twists and turns over the years, the current state of the law appears to be that an estoppel claim does not

lie in such circumstances.

In this regard, *Everett Associates, Inc. v. Transcontinental Ins. Co.* 159 F. Supp. 2d 1196 (N.D. Cal. 2001), canvassed an extensive body of California precedent and instructed that "'the measure of damages for a wrongful failure to defend [is] limited to the costs and attorney fees expended by the insured in defending the underlying action.'" *Id.* at 1209 (quoting *Pruyn v. Agricultural Ins. Co.*, 42 Cal. Rptr. 2d 295, 302 n.15 (Cal. App. Ct. 1995)); *see also id.* at 1209 ("'If, in that subsequent action, it is determined that there was no coverage, then the measure of damages for a wrongful failure to defend would be limited to the costs and attorney fees expended by the insured in defending the underlying action.'") (quoting *Pruyn*, 42 Cal. Rptr. 2d at 295 n.15). *Everett Associates* viewed this rule as "a matter of simple causation" theory. *Id.*, 159 F. Supp. 2d at 1211. According to California law as explicated by *Everett Associates*, an insured "must show that 'but for' . . . [the insurer/defendant's] breach" of the duty to defend, the insured "would not have been liable" for the underlying settlement or judgment. *Id.* Thus, where the insured would have been liable for the underlying judgment independently of whether the insurer lived up to its duty to defend or not, then no damages (beyond the attorneys' fees and costs associated with the breach of the duty to defend) would be appropriate. *Id.*

To be sure, the Court's research shows that the question of damages following breach of a duty to defend can be a factually complex one under California law. *See, e.g., Amato v. Mercury Cas. Co.*, 61 Cal. Rptr. 2d 909, 914-15 (Cal. App. Ct. 1997) (reversing a prior opinion in the same case and teaching that the costs of the underlying judgment are attributable to the insurer if it breached the duty to defend and that breach proximately triggered a default judgment). In addition, it appears that the insurer may be liable for additional damages (over and above the

costs of the wrongfully refused defense) if the insurer's violation of the duty to defend is sufficiently egregious that it violates the covenant of good faith and fair dealing. *See Everett Associates*, 159 F. Supp. 2d at 1210 ("[W]here the failure to defend also violates the covenant of good faith and fair dealing, courts have generally held the insurer liable for the full settlement.") (discussing *Pershing Park Villas Homeowners Ass'n v. United Pacific Ins. Co.*, 219 F.3d 895, 902 (9th Cir. 2000)). However, whatever ambiguity exists concerning whether Nvidia conceivably might recover some day for a future judgment against it in the underlying VisionTek suit, it appears clear that Nvidia will not be able to impose financial responsibility on Federal simply by showing that Federal breached a duty to defend. Accordingly, the requested grant of summary judgment and/or declaratory relief is inappropriate.

As previously discussed, the choice of law question in this case is not a frivolous one. And, under Illinois law, the rule in favor of finding estoppel in the wake of a wrongful denial of the duty to defend is a fairly robust one. There are gray areas that are the subject of some ambiguity, but generally speaking, when an insurer believes it has no duty to defend, under Illinois law "[i]t must either defend the insured under a reservation of rights or seek a declaratory judgment. If the insurer does neither and is subsequently found to have wrongfully refused to provide a defense, the insurer will be estopped from raising any coverage defenses, except when there is a serious conflict of interests." *Electric Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 346 F. Supp. 2d 958, 968 (N.D. Ill. 2004) (collecting cases; internal citation omitted). The rationale for this rule seems to be that Illinois courts want to ensure that insurance companies are deterred from abandoning Illinois insureds, such that the insurers are required to defend or seek a declaratory judgment. *See Korte Constr. Co. v. American States Ins.*, 750

28

N.E.2d 764, 772 (Ill. App. Ct. 2001) (holding that the insurer "should have raised these disputes in a declaratory judgment action or defended . . . [plaintiff] under a reservation of rights, instead of simply denying its duty to defend, abandoning its insured, and forcing the insured to file a declaratory judgment action."). With respect to choice of law, however, it is difficult to see why Illinois or its laws would have any particular interest in affording this protection to Nvidia under the circumstances of this particular case. Nvidia is not an Illinois insured (its principal place of business actually is in California), and Federal does not even have any particular connection to Illinois. (It is located in New Jersey, and it is incorporated in Indiana (D.E. 1 ¶ 3; D.E. 9 ¶ 3)). While one can certainly see why Illinois would impose its estoppel rule so as to encourage insurers not to "abandon" Illinois citizens, California's rule—which seems to put more focus on letting the parties reach the "merits" of their contractual dispute—is hardly an irrational or uncivilized one. In fact, it is one that is generally consistent with a seemingly broader policy in California law that is less receptive to waiver/estoppel types of arguments, a policy that variously benefits insureds and insurers based on the particular issues and circumstances in a given case. *See generally Ringler Assocs. Inc. v. Maryland Cas. Co.*, 96 Cal. Rptr. 2d 136, 155 (Cal. App. Ct. 2000) (teaching that "[i]n the insurance context, California courts have applied the general rule that waiver requires the insurer to intentionally relinquish its right to deny coverage, and a denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial") (collecting cases); *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 15 Cal. Rptr. 2d 815, 845 (Cal. App. Ct. 1993) (requiring insurer to show actual and substantial prejudice from late notice, even when insured has provided deficient notice under policy). Courts have long recognized that states can make different judgments

29

about such questions of law, and that their diverse choices are an inherent part of the structure of our multi-level form of government. *Cf. Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). To be sure, there is nothing in the structure of the Constitution or law that forbids an Illinois court from applying its own law to non-resident parties (it happens all the time). Nonetheless, when assessing the balancing-of-interests approach that animates Illinois's choice of law analysis, it would seem that the Illinois courts would have little apparent reason to impose Illinois law designed to regulate interactions between insurers and insureds in order to favor a California insured, who signed a contract with a non-Illinois insurer, that was delivered by a California producer and signed in California, where the California insured would lose on the waiver/automatic duty to indemnify question under the law of its own state. That seems particularly true given that under the law of the insured's own home state, Nvidia is not cast adrift without a potential remedy, but instead it gets a full chance to address the merits of the issue.

For reasons previously stated, the Court believes the balancing of interests analysis prescribes that California law be applied to the duty to defend/indemnification estoppel question. Under California law, Nvidia is not entitled to declaratory relief on the case as framed. A review of Illinois's interest in this setting further counsels against displacement of California law, under which Nvidia does not prevail. Accordingly, Nvidia's request for summary judgment and/or declaratory relief on Count II is denied. Federal's motion to dismiss Count II (which sought simply a declaration that Federal is estopped from contesting indemnification liability for any eventual judgment or settlement) is granted. That grant, of course, takes no position on whether Federal ultimately may have indemnification responsibility "on the merits" for any judgment or

30

settlement in the future that might potentially eventuate. *See generally Truck Ins. Exchange*, 61 Cal. Rptr. 2d at 501 ("[t]he duty to defend is broader than the duty to indemnify . . . .").

III.   CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is granted as to Count II and denied as to Count I. Plaintiff's motion for partial summary judgment is denied as to Count II and granted as to Count I. The parties are respectfully requested to promptly confer to attempt to determine an agreed damages figure (reserving all rights to appeal, of course) consistent with this opinion.

So Ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Dated:   *September 6, 2005*